Judge Rowan
delivered the opinion of the court.
An instrument of writing purporting to be the last will and testament of Spencer Peake, deceased, was presented for probate in the county court of Scott county by Edgecomb P. Suggett, in behalf of Hannah and other slaves therein named, who by the provisions thereof were, and would be, entitled to their freedom. That court being of the opinion that the said instrument was not the last will and testament of Spencer Peake, refused to permit it to be recorded. The negroes sued out their writ of error to reverse the opinion aforesaid, and to have the said instrument of writing established and recorded as the last will and testament of the said Spencer Peake, deceased.
The instrument purporting to be the will aforesaid, was subscribed with the name of Spencer Peake, as were two postscripts in the nature of codicils thereto, but there was no subscribing witness to either signature. The whole was alledged to be in the hand writing of the testator. There were, moreover, several erasures and interlineations therein. Messrs. W. Suggett, Thompson and Jett, severally swore that they had seen the testator write, were acquainted with his hand writing, and that they believed the will was in his hand writing, including his signature thereto; that they were unable to say that the codicils were or were not in his hand writing; some of them thought they could discern a remote resemblance in the codicils to his hand writing—they could say nothing about the interlineations—they knew not in whose hand writing they were.
The plaintiffs in error introduced as a witness Mr. Johnson, who deposed that Mr. Peake, the testator, in the year 1813, when they were together on the Canada expedition, recited to him, in a friendly conversation, the disposition which he had made, or intended to make, of his estate—and that the provisions of the will corresponded substantially with the recital aforesaid, particularly so far as related to the emancipation of the slaves, and the provision made for them. Peake died on the 15th of December, 1817. His nephew, Mr. Anderson, deposed that two or three days before his uncle’s death, the will was shewn to him by Hannah, one of the negroes therein mentioned, who said her master, the testator, had given it to her, with directions *134 that if he died, she was to give it to Presley Peake, the defendant, and if he lived she was to say nothing about it—she requested witness to read it, he did so—he deposed that the will, when shewn to him, by the negro woman aforesaid, had all the erazures and interlineations which it now has—that he is unable to perceive any alteration therein, either in the meaning or words thereof—he stated farther, that Hannah was the confidential house servant of the testator. It appeared, moreover, in proof, that she shortly after the death of her master, gave the will to Presley Peake, the defendant.
James Suggett, a witness on the part of the defendant, deposed that he had been long acquainted with the testator, knew his hand writing well, and was of opinion that the entire writing of the will and codicils, was not in the hand writing of the testator. The writing in the will resembled his, but the writing in the codicils was so unlike his hand writing, that he had given it as his opinion, that none of it had been written by Spencer Peake.
The testimony of Mrs. Chew and Mrs. Anderson, conduced to the establishment of facts in affirmance of the will and codicils—the testimony of the former in affirmance of the will; that of the latter in affirmance of the codicils
The testimony, we think, taken all together, establishes the fact pretty satisfactorily, that the will is altogether in the hand writing of Spencer Peake, the testator, excluding his signature thereto. We cannot perceive in the codicils and signatures thereto, that striking dissimilitude between the hand writing thereof and that of the will, which seems to have been discerned by the witness, James Suggett. That there is a difference is evident, but not greater, we think, than might be produced by the ravages of disease upon a subject which it was hastening to destroy. The codicils were written, as appears from the testimony and the date they bear, when the testator was greatly enfeebled by disease and on the eve of dissolution. At that time, also, it is probable that the interlineations were made in the will. The latter part of the last codicil and the interlineations, would seem to have been written by the same hand and with the same pen and ink. They are both written in a constrained hand—such as might be expected from one who relied more upon conscious effort in the formation of his letters, than upon mechanical habit. Such is the *135 character of the letters made by a school boy before he has acquired, from practice, a confidence in his mechanical skill. The same want of confidence, superinduced by disease and consequent debility, would (we can easily suppose) give the same character to the letters and writing of an adult. But we think the codicils possess in the matters to which they relate, in the details thereof, and in the relation of those details, to the subject matter of the body of the will, intrinsic evidence of their genuineness. Neither of the slaves could write or read writing—neither of them can be supposed, therefore, to have written the codicils or the interlineations, and if a stranger could have found a motive to do it, he cannot be supposed to have possessed that knowledge of the affairs of the testator which is displayed in the codicils. The same mind which makes the disposals in the will, is displayed in the codicils. There is no intimation in the evidence that they were written by any one else, nor does it appear that any other person than the defendant, Presley Peake, had an opportunity to write them—and he, we are happy to say, is proved to possess an excellence of character, and to have exhibited throughout this transaction, a fairness of conduct, well calculated to silence any surmise, that he did, or was capable of doing it. Indeed, the testimony of Anderson as to the state of the will when he saw it in the possession of Hannah, is conclusive on this point.
The statute of wills does not require to constitute a good will in the absence of attesting witnesses, that it should be in the hand writing of the testator, but that it should be written wholly by him: a will written "wholly" by the testator, but in a disguised hand, is nevertheless good.
The whole of the will and the codicils purport to have been written by Spencer Peake by the sub-signature of his name thereto. The proof that the will was written by him is positive and satisfactory. The proof that the interlineations were made and the codicils written by him in like manner is chiefly presumptive, but not less satisfactory. If we had doubts as to the latter, still we should be obliged, if we rejected them, to sustain the will upon the proof positive as to it. But believing that they breathe the spirit, and were written by the hand of Spencer Peake, we cannot reject them. The requisition of the statute is not that the will shall be in the hand writing of the testator, but that it shall be written wholly by himself. When a will is written wholly by the testator, it is then evidently his hand writing: But if a will were written in a disguised hand, which could not only not be recognized by any, as the hand writing of the testator, but negatived by all as such; yet upon its being proved to have been written wholly by him, we should *136 be constrained to establish it as his will. We believe this will and the codicils to have been written wholly by Spencer Peake, and are therefore obliged to establish it as his last will and testament. It must be recorded as such in the Scott county court—whose opinion is hereby reversed with cost.